UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JESSICA POULIN, D.O., | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| NORTHERN LIGHT INLAND HOSPITAL, and NORTHERN LIGHT HEALTH, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Jessica Poulin, D.O., complains against Defendants Northern Light Inland Hospital and Northern Light Health as follows:

### PARTIES

1. Plaintiff, Dr. Jessica Poulin, is a physician licensed to practice medicine in the State of Maine, with a specialty in Osteopathic Neuromusculoskeletal Medicine. She resides in Winthrop, Maine.

2. Defendant Northern Light Inland Hospital ("NLIH") was, at all times relevant to this action, a health care provider located in Waterville, Maine, and is a subsidiary of Defendant Northern Light Health, which maintains its headquarters in Brewer, Maine, and is licensed to business in the State of Maine.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, including her claims under the False Claims Act, 31 U.S.C. § 3730(h).

4. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Maine.

6. Plaintiff has exhausted all necessary administrative remedies and has otherwise met all conditions before commencing suit on this matter, including obtaining a "Notice of Right to Sue" letter from the Maine Human Rights Commission.

## FACTUAL ALLEGATIONS

7. Plaintiff was employed as a physician by Defendants from June 5, 2020 until her termination on May 16, 2024.

8. At all times relevant to this Complaint, Plaintiff was employed pursuant to a Physician Employment Agreement ("PEA").

9. Plaintiff is board certified in Osteopathic Neuromusculoskeletal Medicine by the American Osteopathic Association ("AOA").

10. Throughout her employment, Plaintiff met or exceeded all performance expectations.

11. In March 2024, Plaintiff learned that the VP of Physician Services, Dr. Chobanian, had made derogatory comments about her qualifications and level of compensation, and referred to her as a "chiropractor." Shortly thereafter, Plaintiff was subjected to scrutiny over her billing practices.

12. In late March or early April 2024, Plaintiff met with NLIH's VP of Compliance, Eric Hafener, who stated that she had been "flagged" in the compliance system for her high usage of the so-called "25 modifier."[1]

13. Mr. Hafener told Plaintiff that her clinical notes had been "audited," but he refused to disclose by whom. He showed her selections from the audit, and questioned her about them.

14. Plaintiff was concerned about who performed the audit of her clinical notes because AOA guidelines require clinical note audits to be performed only by a physician board certified in the same area as the subject physician's field of medicine.

15. Plaintiff explained that her billing practices were not only appropriate, but were required for each of her patients who saw her for Evaluation & Management ("E/M"), and who then required Osteopathic Manipulation Treatment ("OMT"). She told him that her billing was

---

[1] "25 Modifier" refers to a CPT billing code that indicates significant, separately identifiable E/M service performed by the same physician on the same day as a procedure or other service.

necessary and consistent with AOA and Medicare guidelines, particularly when both E/M service and OMT were performed on the same date.

16. During the meeting, Mr. Hafener conceded that under-coding, like over-coding, constitutes fraud, but downplayed the likelihood of enforcement. He further stated that most physician codes at Northern Light are submitted without review. He explained that it was "too hard, and too expensive" to audit notes at the level that Plaintiff had been led to believe when she was hired. He added that this practice, among others, has created "a lot of skeletons in the closet" for NLIH.

17. Throughout her employment at NLIH, Plaintiff became aware of some of the "skeletons" to which Mr. Hafener referred. Certain practitioners coded for procedures that were covered by insurers, when the procedures that they actually performed were not covered. Others simply billed for services that were not performed at all.

18. Plaintiff understood that Mr. Hafener was instructing her to under-code her treatments.

19. Plaintiff told Mr. Hafener that she would never participate in a fraudulent coding scheme, no matter how unlikely it is to be investigated.

20. On April 12, 2024, Dr. Chobanian instructed Plaintiff that, going forward, she could only code new patients as she had been (using the "25-modifer" when performing E/M and OMT on the same day). However, he told

her that for all existing patients, she could only use a 99212, or no code for E/M at all, when she performed both E/M and OMT on the same day.

21. Plaintiff objected to Dr. Chobanian's instruction, warning that such practices were fraudulent and unethical. She asserted that all of her client visits met the coding criteria for an E/M, and most meet the criteria for OMT, using the "25 modifier."

22. Plaintiff told Dr. Chobanian that he was instructing her to under-code, which was a fraudulent practice.

23. Dr. Chobanian, an M.D., responded by saying that he "didn't care," and that he didn't understand osteopathic medicine or the intricacies of its coding requirements. He reiterated his directive that Plaintiff was not to code for an E/M with OMT, or to only code 99212 E/M with OMT, even when she performed a visit that justified using codes 99213 or 99214. He told her that she was to uniformly down-code all E/Ms or not code for them at all when performing OMT on existing patients.

24. At the end of the conversation, Dr. Chobanian acknowledged that his instructions would also have a significant negative impact on Plaintiff's compensation.

25. Plaintiff contacted the AOA, which confirmed that omitting E/M codes when medically justified constituted fraudulent under-coding.

26. Plaintiff conveyed this confirmation to Dr. Chobanian and Tricia Costigan, the President of NLIH at the time.

27. On May 13, 2024, Mr. Hafener reiterated that Defendants expected Plaintiff to omit E/M codes for existing patients, except in rare circumstances, despite clinical necessity.

28. Plaintiff responded to Mr. Hafener, again raising concerns that she was being pressured to choose between committing fraud (under-coding) or malpractice (performing OMT without first evaluating her patients, thereby jeopardizing their health and safety). Plaintiff declined to choose either option, and cited AOA guidelines supporting the appropriateness of her treatment and coding practices.

29. On May 16, 2024, Plaintiff was summoned to a meeting with Dr. Chobanian and NLIH President Tricia Costigan. Again, they pressured Plaintiff to perform OMT only, and not perform E/M on her existing patients or, if she insisted on evaluating her patients before performing treatments on them, to not code for the E/M. When Plaintiff refused to comply with the unlawful coding directives, and unsafe clinical directives, Ms. Costigan and Dr. Chobanian terminated Plaintiff's employment.

30. At all times, Plaintiff acted in good faith to report and oppose what she reasonably believed to be unlawful practices and policies that posed serious risks to patients' health and safety and violated applicable federal and state laws.

## COUNT I
### Retaliation in Violation of the Maine Whistleblowers' Protection Act
### (26 M.R.S.A. § 833)

31. Plaintiff hereby repeats, realleges, and incorporates by reference paragraphs 1 through 30 of this Complaint.

32. Plaintiff engaged in protected activity by reporting to Defendants, and to her licensing authority, that Defendants' coding directives constituted fraud and posed risks to patient health and safety.

33. Defendants were aware of Plaintiff's protected activity.

34. Plaintiff suffered an adverse employment action when Defendants terminated her employment on May 16, 2024.

35. A causal connection exists between Plaintiff's protected activity and the adverse action, as Defendants terminated her employment immediately after her refusal to comply with fraudulent coding directives.

36. Defendants' conduct constitutes unlawful retaliation in violation of the MWPA, 26 M.R.S.A. § 833(**1**)**.**

## COUNT II
### Retaliation in Violation of the False Claims Act
### (31 U.S.C. § 3730(h))

37. Plaintiff hereby repeats, realleges, and incorporates by reference paragraphs 1 through 36 of this Complaint.

38. Plaintiff engaged in protected conduct under the False Claims Act by refusing to participate in fraudulent billing practices and by taking steps to prevent violations of federal law.

39. Defendants were aware of Plaintiff's protected conduct.

40. Defendants terminated Plaintiff's employment in retaliation for her engaging in protected conduct under the False Claims Act.

41. Defendants' actions constitute unlawful retaliation in violation of 31 U.S.C. § 3730(h).

## COUNT III
## Breach of Contract

42. Plaintiff hereby repeats, realleges, and incorporates by reference paragraphs 1 through 41 of this Complaint.

43. Defendant terminated Plaintiff's employment in bad faith, without notice or cause, on May 16, 2024, in violation of the PEA.

44. Defendants failure to fulfill its contractual obligations constitutes breach of the PEA under Maine law.

45. As a direct and proximate result of Defendants' breach, Plaintiff has suffered economic damages including, but not limited to: (a) lost wages from base salary and performance incentives; (b) extra shift compensation; (c) education loan reimbursement; and (d) other benefits set forth in the PEA.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in her favor on all counts;

B. Award her back pay, front pay, lost benefits, and other economic damages;

C.  Award compensatory damages for emotional distress and reputational harm;

D.  Award punitive damages as permitted by law;

E.  Award attorneys' fees and costs under applicable federal and state statutes; and

F.  Grant such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 21, 2025

Respectfully submitted,

*/s/ Andrew P. Cotter*
Andrew P. Cotter, Esq.
andrew@cliffordclifford.com

James A. Clifford, Esq.
james@cliffordclifford.com

Clifford & Clifford, LLC
10 Moulton Street, 5th Floor
Portland, ME 04101
(207) 613-9465
*Attorneys for Plaintiff*