UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JESSICA POULIN, D.O.,                )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        1:25-cv-00532-SDN
                                     )
NORTHERN LIGHT INLAND                )
HOSPITAL, et al.,                    )
                                     )
            Defendants.              )

**ORDER GRANTING MOTION TO DISMISS**

In this matter, Plaintiff Jessica Poulin, D.O., sued Defendants Northern Light Inland Hospital ("NLIH") and parent company Northern Light Health following the termination of her employment as a physician. ECF No. 6 (First Amended Complaint). Dr. Poulin alleges retaliation in violation of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and the Maine Whistleblowers' Protection Act ("MPWA"), 26 M.R.S. § 833, in addition to breach of her employment agreement. *Id.* at 8–10. Defendants moved to dismiss Dr. Poulin's complaint, arguing she failed to state a plausible claim for relief on any of her three claims. ECF No. 7. For the following reasons, the Court **GRANTS** the Defendants' motion and **DISMISSES** Dr. Poulin's amended complaint without prejudice.

**FACTUAL BACKGROUND[1]**

Dr. Poulin is a physician licensed to practice medicine in the State of Maine, with a specialty in Osteopathic Neuromusculoskeletal medicine. ECF No. 6 ¶ 1. Defendant

---

[1] The Court derives the following facts from Dr. Poulin's amended complaint, ECF No. 6, accepts them as true, and draws all reasonable inferences in her favor. *See Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

1

NLIH employed Dr. Poulin as a physician from June 5, 2020, until her termination on May 16, 2024. *Id.* ¶ 7. Dr. Poulin's employment with NLIH was pursuant to a Physician Employment Agreement. *Id.* ¶ 8. Throughout her employment at NLIH, Dr. Poulin "met or exceeded all performance requirements." *Id.* ¶ 10.

In late March or early April 2024, Dr. Poulin met with NLIH's Vice President of Compliance, Eric Hafener, who informed Dr. Poulin she had been flagged by the internal compliance system for high usage of the "25 modifier," a billing code which indicates a separately identifiable Evaluation & Management ("E/M") service performed by the same physician on the same day as another procedure or service. *Id.* ¶¶ 13, 13 n.1. Mr. Hafener also told Dr. Poulin her clinical notes had been audited but refused to disclose by whom. *Id.* ¶ 14. Dr. Poulin asserted her billing codes were both appropriate and "necessary and consistent" with applicable Medicare/Medicaid guidelines, particularly when separate services were performed on the same day. *Id.* ¶ 16. During the meeting, Mr. Hafener made a number of other statements, including: conceding that under-coding constituted fraud but downplaying the likelihood of enforcement, stating that most physician codes at NLIH were submitted without review because it was "too hard, and too expensive" to audit physician notes, and finally stating that this practice had created "a lot of skeletons in the closet" for NLIH. *Id.* ¶ 17. Dr. Poulin understood Mr. Hafener's statements to mean he was instructing her to submit under-coded bills for payment to Medicare/Medicaid and private insurers. *Id.* ¶ 22. She told Mr. Hafener "she would never participate in a fraudulent coding scheme, no matter how unlikely it is to be investigated." *Id.* ¶ 23.

On April 12, 2024, NLIH's Vice President of Physician Services, Dr. Chobanian, instructed Dr. Poulin she could code new patients as she had previously, using the "25 modifier," but that for all existing patients, she could only code using a different E/M code

2

or no E/M code at all. *Id.* ¶ 24. In response to Dr. Poulin's objection that his instruction constituted a fraudulent billing practice, Dr. Chobanian responded that he "didn't care," and reiterated his instruction. *Id.* ¶¶ 25–27. Dr. Chobanian acknowledged this practice would have a "significant negative impact" on Dr. Poulin's compensation. *Id.* ¶ 28.

Following this conversation, Dr. Poulin consulted the applicable ethical guidelines and contacted the American Osteopathic Association ("AOA"), which confirmed NLIH's instruction constituted fraudulent under-coding. *Id.* ¶ 29. Dr. Poulin informed both Dr. Chobanian and Tricia Costigan, the then–President of NLIH, of this fact. *Id.* ¶ 30. Around one month later, on May 13, 2024, Dr. Poulin had another conversation with Mr. Hafener regarding his instruction to omit E/M codes for existing patients, to which Dr. Poulin again refused, this time citing applicable AOA guidelines "supporting the appropriateness of her treatment and coding practices." *Id.* ¶¶ 31–32.

On May 16, 2024, Dr. Chobanian and President Costigan called Dr. Poulin to a meeting where they again pressured her to follow the same instructed billing practice. *Id.* ¶ 33. Following her refusal to do so, Dr. Chobanian and President Costigan terminated Dr. Poulin's employment with NLIH. *Id.* Dr. Poulin asserts that, at all times, she "acted in good faith to report and oppose what she reasonably believed to be unlawful practices and policies that posed serious risks to patients' health and safety and violated federal and state laws." *Id.* ¶ 34.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, with enough factual detail to make the asserted claim plausible on its face." *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36

3

F.4th 29, 33 (1st Cir. 2022) (quotation modified). In evaluating a complaint, courts must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See Lawrence Gen. Hosp. v. Cont'l Cas. Co.*, 90 F.4th 593, 598 (1st Cir. 2024). In this process, courts disregard "legal labels or conclusions, or statements that merely rehash elements of the cause of action." *Halsey v. Fedcap Rehab. Servs., Inc.*, 95 F.4th 1, 10 (1st Cir. 2024) (quoting *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 23 (1st Cir. 2018)). Instead, they consider whether "the complaint's non-conclusory, non-speculative factual allegations . . . plausibly narrate a claim for relief." *Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024) (quoting *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022)).

## I.    False Claims Act ("FCA")

The False Claims Act applies to "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Under the FCA, a "claim" includes "direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefit programs," such as Medicaid or Medicare. *Guilfoile v. Shields*, 913 F.3d 178, 187 (1st Cir. 2019) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016)) (quotation modified). The First Circuit recently interpreted the FCA as an "expansive statute" designed "to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States ex rel. Flanagan v. Fresenius Med. Care Holdings, Inc.*, 142 F.4th 25, 34 (1st Cir. 2025) (quotation modified).

The FCA further contains a provision prohibiting employers from retaliating against an employee "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations" of the FCA.

4

31 U.S.C. § 3730(h)(1). This anti-retaliatory provision of the FCA "protects employees who pursue, investigate, or contribute to an action exposing fraud against the government." *Jewell v. Lincare, Inc.*, 810 F. Supp. 2d 340, 343 (D. Me. 2011) (quotation modified). To prevail on an FCA retaliation claim under § 3730(h), an employee must establish (1) their conduct was protected under the FCA, (2) the employer knew the employee was engaging in protected conduct, and (3) the employer discharged or discriminated against the employee because of their protected conduct. *See Guilfoile*, 913 F.3d at 187–88. To survive a motion to dismiss, an employee must sufficiently plead "protected conduct," defined as "activities that reasonably could lead to an FCA action; in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government." *United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 59 (1st Cir. 2017) (quotation modified); *see Hinson v. Microwave Techs., LLC*, No. 22-cv-00114, 2023 WL 2683016, at *5 (D. Me. Mar. 29, 2023). An employee must also establish their protected conduct was the but-for cause of the retaliation or termination. *See Lestage v. Coloplast Corp.*, 982 F.3d 37, 46 (1st Cir. 2020) (applying but-for cause standard to FCA retaliation claims).

Defendants argue Dr. Poulin has failed to state an FCA retaliation claim because she did not plausibly allege that she engaged in "protected conduct" prior to her termination. They contend the under-coding scheme allegedly urged by NLIH officials would not result in any economic harm to the Government and thus could not reasonably lead to an FCA violation. *See* ECF No. 7 at 9–11.[2] Dr. Poulin responds that following NLIH

---

[2] Dr. Poulin's response to NLIH's motion appears to confirm as much. *See* ECF No. 12 at 12 ("Here, the improper use of the -25 modifier as instructed would not have necessarily resulted in financial harm for the federal government.").

5

officials' coding and billing instructions constituted a material misrepresentation and thus a "false or fraudulent claim" prohibited by the FCA, such that her investigation and reporting of NLIH's billing practices qualify as "protected conduct" under the FCA. ECF No. 12 at 8–10.

The statutory context and history of the FCA confirm the statute was designed to "protect the funds and property of the Government," *United States ex rel. Sargent v. Collins*, 165 F.4th 102, 111 (1st Cir. 2026) (quotation modified), and to reach all types of fraud that "might result in financial loss to the Government," *Flanagan*, 142 F.4th at 34 (quotation modified); *see also Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 128 (2003) (noting Congress' primary concern in enacting the FCA was "stopping the massive frauds perpetrated by large private contractors during the Civil War" (quotation modified)). Multiple other federal courts have likewise concluded the submission of false claims "which do not or would not cause financial loss to the government are not within the purview of the False Claims Act." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 183 (3d Cir. 2001) ("Nor have we been able to find any case establishing that a false statement to the government which would not cause the government economic loss gives rise to False Claims Act liability."); *see, e.g.*, *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 677 (8th Cir. 1998) (holding only actions that cause the Government to pay out money or that "intentionally deprive the United States of money it is lawfully due" qualify as "claims" under the FCA).

Here, Dr. Poulin alleges she engaged in protected conduct consisting of investigating relevant ethical guidelines, consulting with the AOA, and reporting her concerns regarding NLIH's Medicare/Medicaid billing practices to her supervisors and NLIH leadership. ECF No. 6 ¶¶ 16, 21, 26, 29–30. This type of conduct indeed resembles

the conduct courts have found sufficient to support FCA retaliation claims. *See, e.g.*, *Guilfoile*, 913 F.3d at 187–88; *Soni v. Bos. Med. Ctr. Corp.*, 683 F. Supp. 2d 74, 97 (D. Mass. 2009) (denying motion to dismiss FCA retaliation claim where plaintiff sufficiently alleged investigations and complaints regarding the defendant improperly billing the government for "excessive medical procedures"). However, on this record, Dr. Poulin cannot establish her conduct could "reasonably could lead to an FCA action," *Pfizer*, 847 F.3d at 59 (quotation modified), based on her own admission that said conduct was aimed at challenging NLIH's alleged practice of under-coding, rather than over-coding, *see* ECF No. 6 ¶¶ 22, 24.

Unlike typical FCA cases involving inflated Medicare/Medicaid claims or claims for services not provided, Dr. Poulin alleges NLIH instructed her to refrain from billing for services that *were* provided to patients, thus reducing the total amount owed by the Government. While the Court does not foreclose the possibility that such alleged practices, if true, could support other causes of action, the absence of a sufficiently pleaded economic injury to the Government is fatal to Dr. Poulin's FCA retaliation claim. *See Universal Health Servs.*, 579 U.S. at 194 (noting the FCA is not "an all-purpose antifraud statute" (quotation modified)).

In her amended complaint, Dr. Poulin also alleges additional instances of purported "skeletons" within NLIH's closet, including NLIH practitioners miscoding for procedures not covered by insurers in order to receive payment, or billing for services that were not actually performed by practitioners. ECF No. 6 ¶¶ 18–19. These generalized allegations are insufficient to carry Dr. Poulin's burden for several reasons. First, she does not allege these miscoded or fraudulent billing requests were submitted to the Government for Medicare or Medicaid reimbursement, rather than to private insurers,

which is an essential element of FCA liability. *See Guilfoile*, 913 F.3d at 187 (a "claim" for purposes of FCA is defined as "direct requests to the government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefit programs" (quotation modified)). Second, Dr. Poulin does not allege she undertook any investigations, inquiries, testimony, or other activities regarding these alleged, separate fraudulent billing practices, nor does she allege that NLIH knew she was engaging in such conduct and terminated her on that basis. Because her allegations do not connect any such investigations to Government claims or to her termination, they likewise cannot sustain an FCA retaliation theory. Dr. Poulin's claim for retaliation in violation of the FCA (Count II) is accordingly **DISMISSED**.

## II.     Remaining State Law Claims

In addition to her claim regarding the False Claims Act, Dr. Poulin brings two additional claims against Defendants, each arising under state law. Dr. Poulin asserts Defendants' termination of her employment constituted unlawful retaliation in violation of the MPWA and a breach of the Physician Employment Agreement governing her employment. ECF No. 6 at 8–10. Because the Court has dismissed Dr. Poulin's claim for retaliation under the FCA, only state law claims remain.

Where all claims over which a district court has original jurisdiction have been dismissed, the district court may decline to exercise supplemental jurisdiction over the plaintiff's remaining claims. *See* 28 U.S.C. § 1367(c)(3). Indeed, "when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" *Zell v. Ricci*, 957 F.3d 1, 15 (1st Cir. 2020) (quoting *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017)); *see also Desjardins v.*

*Willard*, 777 F.3d 43, 46 (1st Cir. 2015) (noting questions of state law "are better resolved by the state courts" and that "needless decisions of state law should be avoided" by federal courts (quotation modified)).

The Court finds no pressing concerns regarding fairness or issues of judicial economy and convenience that would counsel in favor of exercising supplemental jurisdiction over Dr. Poulin's remaining state law claims, and the parties do not argue otherwise. In the absence of such considerations, the interests of comity favor allowing the Maine courts to resolve these state law questions. Should Dr. Poulin seek to pursue her remaining MWPA and breach of contract claims, the state courts are better suited to adjudicate those claims. Dr. Poulin's remaining claims for retaliation in violation of the MWPA (Count I) and breach of contract (Count III) are likewise **DISMISSED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' motion to dismiss. ECF No. 7. Dr. Poulin's amended complaint, ECF No. 6, is accordingly **DISMISSED without prejudice**.

**SO ORDERED.**

Dated this 15th day of July, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

9